IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TAMMY BECKHAM                                                                      PLAINTIFF

V.            Civil No. 2:21-cv-02061-PKH-MEF

KILOLO KIJAKAZI[1], Acting Commissioner,
Social Security Administration                                    DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Tammy Beckham, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff filed her applications for DIB and SSI on October 12, 2017, alleging disability since September 15, 2015, due to severe carpal tunnel syndrome ("CTS") in both hands, neck pain, arthritis in her lower back, and severe depression and anxiety. (ECF No. 12-6 p. 2-14; ECF No.

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

12-7, pp. 6, 22-23). An administrative hearing was held on September 19, 2019, at which time the Plaintiff was present and represented by counsel. (ECF No. 12-3, pp. 2-30).

Plaintiff was 45 years old on her amended alleged onset date and possessed a tenth-grade education. (ECF No.12-4, p. 2; ECF No. 12-7, p. 7). She had past relevant work ("PRW") experience as a housekeeping cleaner. (ECF No. 12-7, pp. 7, 14-21).

On December 2, 2019, the Administrative Law Judge ("ALJ") identified the following impairments as severe: cervical and lumbar degenerative disk disease ("DDD"); obesity; diabetes mellitus; disorder of the left shoulder; and major depressive disorder. (ECF No. 12-2, pp. 157). She then concluded the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.). Despite her impairments, the ALJ found she retained the residual functional capacity ("RFC") to perform light work with occasional climbing, balancing, stooping, kneeling, crouching, crawling, and reaching overhead with her non-dominant left upper extremity. (*Id*. at 159). Further, she determined the Plaintiff could perform work where the interpersonal contact is incidental to the work performed, the tasks are no more complex than those learned and performed by rote with few variables and little judgment, and where they require simple, direct, and concrete supervision. The ALJ ultimately decided she could return to her PRW as a housekeeping cleaner. (*Id*. at 164).

The Appeals Council denied Plaintiff's request for review on January 8, 2021. (ECF No. 12-2, pp. 2-6). Plaintiff then filed this action on June 4, 2021. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 16, 17), and the matter is ready for Report and Recommendation.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in the light of her RFC if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

Plaintiff raises several issues on appeal, including a contention that the ALJ committed reversible error when he failed to resolve a conflict between his RFC assessment, the VE's testimony, and the Dictionary of Occupational Titles ("DOT"). She insists the ALJ did not elicit a reasonable explanation from the VE. After carefully reviewing the record, we agree.

When a vocational expert (VE) provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE's evidence and the information provided in the Dictionary of Occupational Titles ("DOT"). *Jones v. Astrue*, 619 F.3d 963, 977-78 (8th Cir. 2010). This responsibility is mandated by the Commissioner's own Policy, SSR 00-4p. *Id*. An ALJ cannot rely on expert testimony that conflicts with the job classifications in the DOT unless there is evidence in the record to rebut the DOT classifications. *Id*. And when the VE testimony conflicts with the DOT, the DOT controls unless its classifications are rebutted. *Id*. at 978.

A conflict may not, however, be resolved by a VE simply citing to his or her experience. *See Montoya v. Social Security Administration*, 2019 WL 2482719, *2 (E.D. Ark. 2019) ("One wonders what is based on experience and how that experience explains the conflict."); *see also*

*Pixler v. Berryhill*, 2018 WL 3742457, *7 (W.D. Mo. 2018) (expert's "vague assurances that she relied on some combination of the DOT and her professional experience failed to provide a reasonable explanation to resolve the conflict"). A more detailed explanation is required. *Manuel v. Saul*, 2020 WL 6200186, * 2 (E.D. Ark., Oct. 22, 2020). And the Eighth Circuit has specifically held that a limitation to occasional overhead work conflicts with DOT jobs requiring frequent reaching. *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632-633 (8th Cir. 2014).

Here, the ALJ limited the Plaintiff to unskilled light exertional level work with occasional climbing, balancing, stooping, kneeling, crouching, crawling; and overhead reaching with her left upper extremity. (ECF No. 12-2, p. 159). Based on these limitations, the VE testified that the Plaintiff could perform her PRW as a housekeeper/cleaner. He further testified that if she were limited to sedentary exertional level work, with the same non-exertional limitations, she could perform the jobs of a document preparer, addresser, or stuffer. (ECF No.12-3, p. 26).

Unfortunately, every occupation identified by the VE, including Plaintiff's PRW, requires frequent reaching. DOT # 323.687-014 (cleaner, housekeeping); DOT # 249.587-018 (document preparer); DOT # 209.587-010 (addresser); DOT # 731.685-014 (stuffer). Rather than explain the jobs identified and the specific reaching requirements of each, when questioned about potential conflicts, the VE merely stated that the DOT was silent on overhead reaching so his answers were based on his observations, experience, knowledge, and education. (ECF No. 12-3, p. 27). However, he offered no personal observations, further explanation, or citation to references for clarification. This lack of insight requires remand for further development of the record as to the specific reaching requirements of the jobs identified by the VE. *Humphrey v. Berryhill*, 2019 WL 1359286, *18 (E.D. Mo. March 26, 2019).

The VE's testimony also raises some question as to whether the manipulative and postural limitations contained in the RFC were accounted for in his calculation of the total number of housekeeping, document preparer, addresser, and stuffer jobs available in the region. When questioned by Plaintiff's counsel, the VE agreed that his numbers were derived by dividing the number of jobs reported in U. S. Publishing's Occupational Employment Quarterly ("OEQ") for a particular category of jobs by the total number of jobs within the corresponding SCO/DOT codes. (ECF No. 12-3, pp. 27-28). Although he purports to have taken Plaintiff's postural and reaching limitations into account in this calculation, he agreed that U. S. Publishing's numbers do not consider postural and manipulative restrictions. (*Id*.). They are solely based on skill, SVP, and exertional restrictions. And, as previously mentioned, the DOT defines each of the potential jobs identified by the VE as requiring frequent reaching. Because the VE provided no explanation of how he adjusted the formula to account for these restrictions, the Court is concerned that the alleged number of jobs available within each category does not reflect the actual number of positions requiring only occasional posturals and reaching overhead. Therefore, on remand, the VE should be asked to explain, with specifics, how his calculations account for these and any additional limitations not included in the OEQ and DOT.

We also note that the record contains only two physical RFC assessments, both completed by state agency physicians in 2018. The most recent of these was completed in September by Dr. Jim Takach. (ECF No. 12-4, pp. 84-85). He concluded the Plaintiff could perform light work with occasional, climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching with his left upper extremity. The ALJ adopted this assessment in totality, despite more recent medical evidence documenting continued physical decompensation.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. The United States Court of Appeals for the Eighth Circuit has held that a claimant's RFC is a "medical question" that is determined based on "all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Therefore, an ALJ's RFC determination must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). Further, limitations resulting from symptoms such as pain must be factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The record chronicles a lengthy medical history positive for a disorder of the left shoulder, cervical and lumbar DDD, CTS, and diabetic neuropathy. Plaintiff suffered from left shoulder acromioclavicular joint arthrosis, left shoulder biceps tenosynovitis, and a partial tear of the left rotator cuff for which she underwent surgical correction in June 2018. (ECF No. 12-11, pp. 12-18; ECF No. 12-13, pp. 28-32; ECF No. 12-16, pp. 2-9). She did well initially, but then required manipulation of the shoulder under anesthesia in October 2018, and additional physical therapy, due to persistent stiffness and scapular protraction. (ECF No. 12-2, pp. 41-43; ECF No. 12-11, pp. 5-10; ECF No. 12-16, pp. 10-28.). Thereafter, the Plaintiff reported improvement in both range of motion and strength. (ECF No. 12-16, pp. 26-28). In March 2019, however, nurse practitioner Heather Manchester noted the Plaintiff's neck pain was made worse by using her left arm and rotating her neck to the left. (ECF No. 12-14, pp. 87-90; ECF No. 12-17, pp. 121-123).

Records also document a history of cervical radiculopathy, radiating into Plaintiff's arms and hands. (ECF No. 12-8, pp. 14-19, 102-104, 133-138; ECF No. 12-9, pp. 64-65, 82-84, 86; ECF No. 12-11, pp. 150-151, 167-172). An MRI of her cervical spine conducted in July 2017 revealed a mild broad-based disk bulge at the C5-6 level. (ECF No. 12-8, pp. 148-152; ECF No. 12-12, pp. 119-120). Sports medicine specialist, Dr. Thomas Cheyne, prescribed a series of epidural steroid injections ("ESIs") that failed to provide her with any long-term pain relief. (ECF No. 12-9, pp. 64-65; ECF No. 12-11, pp. 58-59, 77-79, 93-94, 145-146, 150; ECF No. 12-13, pp. 74-75). Plaintiff reported a sensation of "tiredness" in her arms in April 2019. (ECF No. 12-15, pp. 27-30, 114-117). In August and September 2019, she complained of continued neck pain radiating into her upper extremities. (ECF No. 12-16, p. 65; ECF No. 12-17, pp. 124-127).

Further complicating the matter, Plaintiff had a history of bilateral carpal tunnel syndrome ("CTS") for which Dr. James Kelly performed carpal tunnel release surgery in January and March 2018. (ECF No. 12-8, pp. 5-9, 16-18, 148-152; ECF No. 12-9, pp. 54-56, 67; ECF No. 12-11, pp. 51-52, 82-89, 139-142, 146, 152-156; ECF No. 12-13, pp. 67-71, 99-105). And she also experienced chronic pain due to disk desiccation and small disk bulges in her lower lumbar spine. (ECF No. 12-2, p. 105). In October 2018, she complained of severe back pain with prolonged standing. (ECF No. 12-15, pp. 15). Although she had previously participated in physical therapy, Plaintiff agreed to try it again; however, three months later, she reported that it had not been helpful. (ECF No. 12-15, pp. 20). An intra-articular sacroiliac joint injection administered in February 2019 also proved to be of no benefit. (ECF No. 12-2, pp. 65-66; ECF No. 12-14, pp. 85-86; ECF No. 12-17, p. 119-120, 124-127).

In May 2019, an MRI of her lumbar spine showed degenerative changes and a small disk protrusion at the L5-S1 level with a right-sided disk protrusion at the L3-4 level abutting the nerve

root in the lateral neural foramen. (ECF No. 12-2, pp. 148-149; ECF No. 12-15, pp. 51-52, 128-129, 141-143). The following month, Dr. Laura Bilbruck prescribed Mobic and refilled the Gabapentin for diagnoses of SI joint inflammation, lumbar degeneration, and polyinflammatory disease. (ECF No. 12-15, pp. 95-100). And, in August, the Plaintiff reported persistent pain and swelling in her lower extremities with prolonged walking. (ECF No. 12-16, pp. 65-70). On exam, Dr. Bilbruck noted muscle banding and tenderness in the lumbar spine and SI joints for which she increased Plaintiff's Baclofen dosage. Two months later, the tenderness persisted, and she exhibited pain with trunk flexion, extension, and lumbar facet loading. (ECF No. 12-17, pp. 124-127). Nurse Manchester ordered a lumbar ESI and prescribed stretching exercises.

Finally, the Plaintiff also suffered from diabetic neuropathy in her lower extremities. During a follow-up with Dr. Margaret Cox in December 2018, Plaintiff reported experiencing a great deal of leg pain, stating that they ached when she walked. (ECF No. 12-15, pp. 20-21). Four months later, the pain in her legs with walking persisted. (ECF No. 12-15, pp. 27-30, 114-117). An EMG and nerve conduction studies conducted in May 2019 revealed right S1 radiculopathy versus early diabetic neuropathy. (ECF No. 12-14, p. 114; ECF No. 12-15, p. 43). Three months later, Dr. Bilbruck diagnosed chronic pain secondary to degeneration of her lumbar spine and diabetic peripheral neuropathy. (ECF No. 12-16, pp. 65-70). She prescribed Gabapentin and Baclofen.

Because these records call into question the Plaintiff's ability to perform the standing and walking requirements of light work, to reach in all directions with her left upper extremity, and to manipulate objects, remand is also necessary to allow the ALJ to reconsider Plaintiff's RFC. "Light work" requires the ability to stand and/or walk for a total of six hours out of an eight-hour workday. *See* Social Security Ruling 83-10. Accordingly, on remand, the ALJ is directed to obtain

Medical Source Statements from Plaintiff's treatment providers, Nurse Practitioner Heather Manchester, Dr. Margaret Cox, Dr. Laura Bilbruck, and Dr. Thomas Cheyne.  If these providers refuse or are otherwise unable to provide a statement, the ALJ is directed to order a consultative orthopedic exam, complete with a thorough RFC assessment evaluating the Plaintiff's ability to stand, walk, reach in all directions with her left arm, and manipulate objects.

## IV.     Conclusion

For the reasons stated above, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of July 2022.

/s/ *Mark E. Ford*
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE